IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MANUEL SAAVEDRA | § | |
|     TDCJ-CID #686308 | § | |
| v. | § | C.A. NO. C-12-103 |
| | § | |
| LORIE L. DAVIS, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN ACTION**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court retain plaintiff's failure to protect claims against Major Evelyn Castro, and that service be ordered on this defendant. Moreover, it is respectfully recommended that plaintiff's claims against the remaining defendants be dismissed for failure to state a claim or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division, and is currently incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se*, he filed this lawsuit on April 9, 2012, alleging that defendants were deliberately indifferent to his health and safety by failing to transfer him to another prison unit, despite repeated threats from gang members. He named the following eight individuals as defendants: (1) Senior Warden Lorie Davis; (2) Assistant Warden Carol E. Monroe; (3) Assistant Warden Matt Barber; (4) Sergeant Joe Mireles, gang intelligence officer; (5) Lieutenant Rodriguez; (6) Major Evelyn Castro; (7) Lieutenant Chester Todd; and (8) Ms. Villarreal, Chief of Classification. (D.E. 1).

A Spears[1] hearing was conducted on April 23, 2012. On April 30, 2012, plaintiff filed a supplement to his complaint. (D.E. 8). The following allegations were made in his original complaint, the April 30, 2012 supplement, or at the hearing:

Plaintiff is a former member of a Security Threat Group known as the Hermanoes de Pistoleros Latinos. He renounced his gang affiliation in 2005 and, since that time, has been participating in a comprehensive program to distance himself from his former gang. His goal is to become a "graduate" of the Security Threat Group renunciation program.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

2

At the McConnell Unit, the Hermanoes de Pistoleros Latinos and Mexican Mafia are not necessarily opposed and often unite in criminal activities. Thus, as a former member of Hermanoes de Pistoleros Latinos, plaintiff is considered an enemy of both his former gang as well as the Mexican Mafia.

In February 2011, plaintiff arrived at the McConnell Unit where he was housed in administrative segregation. Tom Hawk, an inmate who was "high up" in the Mexican Mafia organization, was also housed in C-pod at that time.

In August 2011, plaintiff filed a life in danger complaint alleging that he was receiving threats from Mexican Mafia members. An Offender Protection Investigation was opened, and following the investigation, a hearing was held before a Unit Classification Committee ("UCC"). Assistant Warden Barber sat on the UCC and denied plaintiff's request for a unit transfer finding insufficient evidence to support plaintiff's life in danger claim.

In September 2011, a shakedown occurred on C-pod, and marijuana was found in Inmate Hawk's cell. Because he believed plaintiff was a snitch and was responsible for the shakedown, he ordered that plaintiff "be taken out." Consequently, in that month, he filed three life in danger claims with prison officials alleging that he had been receiving increased threats from Mexican Mafia members and that he was not safe on C-pod or at the McConnell Unit. No UCC hearings were conducted because his claims were rejected as repetitious. However, in November 2011, Major Castro moved plaintiff to B-pod, C-section.

In February 2012, plaintiff met with Lieutenant Mireles, a Security Threat Group gang intelligence officer. He told him that he continued to receive threats and that he needed to be moved off B-pod, but Lieutenant Mireles said he could not do anything. Plaintiff filed numerous

I-60 requests and life in danger complaints to be transferred off the McConnell Unit, however defendants refused to conduct further investigations or UCC hearings.

In March 2012, plaintiff was moved to D-pod. However, he continues to receive threats on his life from members of the Mexican Mafia and inmates loyal to Inmate Hawk. No matter where he is housed in administrative segregation plaintiff maintains that because certain officers are "real close" with Mexican Mafia inmates, he is in fear that he will be attacked when his cell door is opened. Ms. Villarreal, the classification administrator, indicated that there is nothing more to be done because he is housed in administrative segregation.

Plaintiff is not seeking damages, but only injunctive relief in the form of a transfer off the McConnell Unit.

### III.  DISCUSSION

**A.    The Legal Standard For Screening Inmate Civil Rights Actions.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). It is well established that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally

construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.     Plaintiff Raises Failure To Protect Claims Against All Of The Defendants.**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Hudson v. McMillian, 503 U.S. 1, 8-10 (1992). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834. Deliberate indifference is more than mere negligence. Id. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer, 511 U.S. at 832). Moreover, a prisoner does not have to "await the consummation of threatened injury to obtain preventive relief." Farmer, 511 U.S. at 845 (citation omitted). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Cantu,

293 F.3d at 844 (citing Farmer, 511 at 847).  Deliberate indifference describes a state of mind "more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety."  Farmer, 511 U.S. at 835.

In this case, plaintiff contends that, due to the renunciation of his gang membership, he was viewed with suspicion when he arrived at the McConnell Unit.  Thereafter, in September 2011, Inmate Hawk blamed him for the shakedown of his cell, and he called on gang members to "take out" plaintiff.  He filed numerous I-60 requests and life in danger claims seeking a unit transfer, but his claims have not been investigated and he had only one UCC hearing in August 2011.  He asserts that defendants have advised him that nothing more can be done because he is as safe as can be expected by virtue of his being assigned to administrative segregation.  No State Classification Committee has reviewed his situation because defendants have never recommended a unit transfer.

### 1. Plaintiff's failure to protect claim against Major Castro is retained, but his claims against Sergeant Mireles and Ms. Villareal are without merit.

Plaintiff testified that, following the August 2011 UCC hearing, he repeatedly filed life in danger claims and I-60 requests to be moved, but Major Castro personally denied those grievances and refused to conduct a UCC hearing.  She did move plaintiff to other pods in administrative segregation such that she had the authority to remedy the situation, but she thwarted his attempts to go before a UCC.  Plaintiff asked Sergeant Mireles for assistance, but he told him any move would have to be authorized by Major Castro.  Ms. Villarreal denied plaintiff a UCC hearing because Major Castro indicated that "she did not have time for him."

Taken as true, plaintiff has stated a claim of failure to protect against Major Castro because he has established that she was aware of a serious risk of harm to his safety, yet she

ignored that risk and instructed other employees to not assist plaintiff. Thus, it is respectfully recommended that the Court retain plaintiff's failure to protect claim against Major Castro.

As to Sergeant Mireles and Ms. Villarreal, however, plaintiff fails to allege sufficient facts that they knowingly ignored a risk to his safety. Instead, a superior officer, Major Castro, denied their attempts to assist plaintiff. Without more, plaintiff fails to state an actionable failure to protect claim against either Sergeant Mireles or Ms. Villarreal, and it is respectfully recommended that plaintiff's claims against them be dismissed.

### 2. Plaintiff's failure to protect claims against Warden Davis, Warden Monroe, and Warden Barber based on the denial of his grievances are without merit.

Plaintiff claims that Warden Davis was deliberately indifferent to his health and safety because he wrote numerous grievances, I-60s, and letters to her, but she did not respond. He claims that he also talked to her directly on one occasion, and she told him to submit his complaints in a sealed envelope that she would pass along to the UCC, but that the UCC still denied his transfer request.

Without more, plaintiff fails to allege sufficient facts to state a claim against Warden Davis. The fact that she did not respond to his I-60s or grievances does not state a constitutional violation. The Supreme Court has held that a prisoner has a liberty interest only in "freedom from restraint which, ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Fifth Circuit has relied on Sandin to find that a prisoner has no federally protected liberty interest in having his prison grievances investigated or answered favorably. See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005); see also Beall v. Johnson, 54 F. App'x 796, 2002 WL 31845615, at *1 (5th Cir. Dec. 12, 2002) (per curiam) (unpublished) (prisoner's allegation that he has a

constitutionally protected right to have his grievance investigated and resolved is without merit because resolution of the grievance does not involve a "significant hardship ... in relation to the ordinary incidents of prison life.") (citing Sandin, 515 U.S. at 485-86); Taylor v. Cockrell, 92 F. App'x 77, 78 (5th Cir. 2004) (per curiam) (unpublished) (same).

Additionally, plaintiff does not suggest that Warden Davis did not forward his complaints to the appropriate personnel, and she cannot be held liable for the constitutional violations of her subordinates. See Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995) (per curiam) ("to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged"). Accordingly, it is respectfully recommended that plaintiff's claim against Warden Davis be dismissed.

Regarding the claim against Warden Monroe, plaintiff testified that he never had a conversation with this official, and that Warden Monroe's only involvement in his case was denying his grievances. Again, these allegations without more, fail to establish that Warden Monroe was aware of a serious risk to plaintiff's safety, but ignored that risk. See Geiger, 404 F.3d at 374. Accordingly, it is respectfully recommended that plaintiff's claim against Warden Monroe be dismissed.

Plaintiff claims that Warden Barber chaired the August 2011 UCC hearing and denied his request for a unit transfer at that time. However, in August 2011, the September 2011 shakedown had not yet occurred, and the threats against plaintiff had not yet escalated as they did after the shakedown. The mere fact that Warden Barber did not believe a unit transfer was warranted in August 2011 does not demonstrate deliberate indifference as plaintiff did have a

UCC hearing and an opportunity to present his case, and Warden Barber's decision was based on the findings submitted after an Offender Protection Investigation was conducted.

Thus, plaintiff's allegations against Warden Barber do not state a constitutional violation. See Geiger, 404 F.3d at 374. Accordingly, it is respectfully recommended that plaintiff's claim against Warden Barber be dismissed.

### 3. Plaintiff's failure to protect claims against Lieutenant Rodriguez and Lieutenant Todd are without merit.

Plaintiff testified that Lieutenant Rodriguez worked the night shift, and plaintiff would talk to him periodically when he made his rounds in administrative segregation. He told Lieutenant Rodriguez that the Mexican Mafia were making threats against him, and Lieutenant Rodriguez advised him to file grievances and life in danger claims. He further indicated that he would pass the information along to Major Castro because he individually "could not do anything." In addition, he offered to shakedown all the cells before plaintiff was moved off C-pod so it would "not look like plaintiff was causing any problems." In instructing plaintiff to follow prison procedures to file life in danger claims and alerting Major Castro, Lieutenant Rodriguez did not ignore plaintiff's safety. Accordingly, it is respectfully recommended that plaintiff's claim against Lieutenant Rodriguez be dismissed.

Similarly, plaintiff testified that he talked to Lieutenant Todd in September 2011. Lieutenant Todd instructed him to complete an I-60 in more detail, and did not move him from C-pod. However, there is no evidence that Lieutenant Todd had the authority to move plaintiff from his cell, and he attempted to assist plaintiff in completing his I-60 properly. Plaintiff fails to state a claim against this defendant. Accordingly, it is respectfully recommended that plaintiff's claim against Lieutenant Todd be dismissed.

## IV.  RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the Court retain plaintiff's failure to protect claim against Major Castro and that service be ordered on this defendant.  It is respectfully recommended further that plaintiff's claims against the remaining defendants be dismissed with prejudice for failure to state a claim and/or as frivolous.  <u>See</u> 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 5th day of July 2012.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure; 28 U.S.C. § 636(b)(1); and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).